*Clear Channel Outdoor, Inc. v. Director, Department of Finance of Baltimore City*, No. 2910, Sept. Term 2018. Opinion filed on January 29, 2020, by Berger, J.

## EXCISE TAX – FIRST AMENDMENT

An excise tax, imposed on the privilege to charge others a fee to use billboard space, does not implicate the First Amendment.

## EXCISE TAX – FIRST AMENDMENT – COMMUNICATIVE ELEMENTS – EXPRESSIVE ELEMENTS

Taxation of a billboard company's economic privilege does not possess sufficient communicative or expressive elements for the First Amendment to come into play.

## FIRST AMENDMENT – BILLBOARD DISPLAYS – FEES

Although the advertisements and messages placed on a billboard are entitled to First Amendment protection, a billboard company's privilege to charge fees to display them is not.

Circuit Court for Baltimore City
Case No. 117025007

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2910

September Term, 2018

_____

CLEAR CHANNEL OUTDOOR, INC.

v.

DIRECTOR, DEPARTMENT OF FINANCE
OF BALTIMORE CITY

_____

Berger,
Beachley,
Wells,

JJ.

_____

Opinion by Berger, J.

_____

Filed:  January 29, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal involves a constitutional challenge to Baltimore City Ordinance 13-139 ("the Ordinance"), which imposes an excise tax ("the Tax") on outdoor advertising displays. Balt. City Code Art. 28, § 29. Clear Channel Outdoor, Inc. ("Clear Channel") owns or operates hundreds of billboards subject to the Tax. It initially challenged the Ordinance in the United States District Court for the District of Maryland, claiming that the Ordinance violated its First and Fourteenth Amendment rights. The District Court granted summary judgment in favor of Baltimore City, holding that the Ordinance was a tax, and therefore, it lacked subject matter jurisdiction to determine the merits of the claim.

Clear Channel subsequently paid the Tax under protest. It then filed a refund request with the Director, Department of Finance of Baltimore City ("the City"), which was denied. Clear Channel sought review of the denial in the Maryland Tax Court, challenging the constitutionality of the tax on First and Fourteenth Amendment grounds, as well as Article 40 of the Maryland Constitution. The Tax Court affirmed the City's denial of the refund request. Clear Channel filed a petition for judicial review in the Circuit Court for Baltimore City, which affirmed the Tax Court's decision. On appeal, Clear Channel presents two questions for our review, which we rephrase as follows:[1]

---

[1] Clear Channel's questions, as presented are:

> 1. Is the operation of billboards that carry the commercial and non-commercial messages of third parties and the billboards' owner protected under the First Amendment and Article 40, subjecting its taxation to heightened scrutiny?

1. Whether the operation of billboards is protected by the First Amendment and Article 40, thereby subjecting its taxation to heightened scrutiny.

2. Whether the Ordinance targets a specific platform for speech and a small group of speakers, thereby subjecting it to heightened scrutiny.

As we shall explain, we hold that the Ordinance does not implicate Clear Channel's right to freedom of speech. Accordingly, we affirm.

## FACTS AND PROCEEDINGS

In 2013, Ordinance 13-139 was signed into law, imposing an excise tax "on the privilege of exhibiting outdoor advertising displays in the City." Balt. City Code Art. 28, § 29-2. The tax is levied upon advertising hosts, which includes "a person who: (1) owns or controls a billboard, posterboard, or other sign; and (2) charges fees for its use as an outdoor advertising display." *Id.* An outdoor advertising display is defined as:

> an outdoor display of a 10 square foot or larger image or message that directs attention to a business, commodity, service, event, or other activity that is: (i) sold, offered, or conducted somewhere other than on the premises on which the display is made; and (ii) sold, offered, or conducted on the premises only incidentally if at all.

---

2. Does a targeted tax on four entities engaged in protected speech violate the First Amendment and Article 40 where, as here, the government interest served by the tax is insufficient to justify the burden on speech as a matter of law and, in any event, the tax is not narrowly tailored to burden no more speech than necessary to advance that interest?

2

*Id.* at § 29-2(d). The Tax is assessed based upon the size of the display and whether it is an electronic display as follows:

(a) *In general*.

The annual amount of the tax imposed is at the following rates per square foot of advertising imagery:

(1) $15 per square foot of advertising imagery for an electronic outdoor advertising display that changes images more than once a day; and

(2) $5 per square foot of advertising imagery for any other outdoor advertising display.

(b) *Tax for a single space*.

If a single space is used for multiple outdoor advertising displays during the course of one reporting period, the advertising host who makes that space available:

(1) must pay the annual tax as if the display that would generate the highest tax liability had been in place for the entire year; and

(2) need not pay an additional tax for any other displays in that space.

*Id.* at §29-3. Each advertising host must file an annual report with the Finance Director specifying the number of advertising spaces it made available for the exhibition of advertising displays, and the location and size of each display.[2] *Id.* at §29-5.

---

[2] Notably, the City imposes various other taxes and fees, including a telecommunications tax, a parking tax, a pole fee, and an energy tax. *See* Balt. City Code Art. 28.

Although there are three other groups that own or operate billboards in Baltimore, Clear Channel owns or operates the majority, and therefore, bears the majority of the Tax's burden. Clear Channel is assessed $1,500 annually when it charges third parties to use a billboard measuring 12 feet by 25 feet, and $3,360 annually when it charges third parties to use an electronic billboard, measuring 14 feet by 48 feet.[3]

The bill file that was introduced into evidence before the Tax Court explains the City's motive for enacting the Ordinance. The Ordinance, which was enacted as part of a ten-year financial plan for Baltimore, is purely a revenue raising measure. The City sought to diversify its revenue portfolio in order to lower property tax rates, increase infrastructure investment, and better manage the City's pension and retiree healthcare liabilities. The Tax on outdoor advertising displays was specifically enacted to help protect the arts and culture funding from further cuts. Further, the City's budget director testified that the revenues generated from the tax are placed into the City's General Fund.

Clear Channel initially challenged the Ordinance in the United States District Court for the District of Maryland in 2013. *See Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore,* 153 F. Supp. 3d 865 (D. Md. 2015). In its Complaint for Declaratory and Injunctive Relief, Clear Channel argued that Ordinance 13-139 violated its right to freedom of speech under the First and Fourteenth Amendments. *Id.* at 868. The City filed a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction under

---

[3] Electronic billboards in Baltimore City are able to display up to six advertisements per minute.

4

the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 (2012), arguing that the Ordinance was a Tax, not a fee. *Id.*

The TIA "provides that federal courts lack subject-matter jurisdiction to enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *Id.* at 870 (citing 28 U.S.C. § 1341) (quotations omitted). The Court denied the motion to dismiss in 2014, explaining that at that stage of the litigation, "the ordinance [was] a fee, not a tax, for the purposes of the TIA." *Id.* at 868. The City filed a motion for reconsideration, which the court denied as well. *Id.* Thereafter, Clear Channel filed a motion for summary judgment and the City filed a cross-motion for summary judgment. *Id.* at 868-69. The Court granted summary judgment in favor of the City, holding that the Ordinance was a "tax" under the TIA, and therefore, it lacked subject matter jurisdiction to determine the merits of the claim. *Id.* at 875.

Clear Channel subsequently paid the Tax as owed for the 2014 and 2015 fiscal years, pursuant to the Ordinance. In February, 2016, Clear Channel demanded a refund of its 2014 and 2015 payments of the Tax and a suspension of the levy for subsequent years, citing its unconstitutionality under the First and Fourteenth Amendments. The City denied the request, explaining that the Tax was imposed to raise revenue and that it was subject to rational basis scrutiny. In July, 2016, Clear Channel paid its 2016 Tax Payment pursuant to the Ordinance and submitted a refund request that day. The City again denied the request. Clear Channel appealed the denial in the Maryland Tax Court, challenging the constitutionality of the Ordinance.

5

Before the Tax Court, Clear Channel argued that outdoor advertising is a constitutionally protected medium of speech under the First and Fourteenth Amendment and Article 40 of the Maryland Declaration of Rights. Clear Channel further contended that the Tax unconstitutionally restricts that speech. It argued, therefore, that heightened scrutiny applied. Clear Channel also averred that the Tax targeted a small group of speakers on the basis of their participation in such speech, and therefore, strict scrutiny applied. The City maintained that as an excise tax, the Tax neither implicates nor burdens the First Amendment and that the Ordinance was simply a tax on the privilege to charge fees.

On February 27, 2018, the Tax Court issued a Memorandum and Order affirming the City's denial of Clear Channel's refund requests for the fiscal years 2014, 2015, and 2016. In rejecting Clear Channel's constitutional contentions, the Tax Court focused on the taxing power of the City. It found that "[a]n excise tax imposed on the privilege of exhibiting outdoor advertising displays is a tax on the privilege of continuing in business, not on exercising free speech," and that a tax on such a business, is "not violative of [Clear Channel's] rights to free speech." Finding that the First Amendment was not implicated, the Tax Court concluded that the City had a rational basis for enacting the Tax.

Clear Channel sought judicial review of the Tax Court's decision in the Circuit Court for Baltimore City. The circuit court found that the Tax Court's decision was correct as a matter of law and that it was supported by the substantial evidence from the record. It, therefore, affirmed the Tax Court's decision. This appeal follows.

6

**STANDARD OF REVIEW**

"Because the Tax Court is an administrative agency, its decisions are reviewed under the same appellate standards generally applied to agency decisions." *Comptroller of Treasury v. Johns Hopkins Univ.*, 186 Md. App. 169, 181(2009). "[W]e look through the decision of the Circuit Court and evaluate directly the conclusions reached by the Tax Court." *Green v. Church of Jesus Christ of Latter-Day Saints*, 430 Md. 119, 132 (2013). This Court gives "great deference to the Tax Court's fact-finding." *Zorzit v. Comptroller*, 225 Md. App. 158, 169 (2015). "[W]here the Tax Court's decision is based on a factual determination, and there is no error of law, the reviewing court may not reverse the Tax Court's order if substantial evidence of record supports the agency's decision*." Supervisor of Assessments of Anne Arundel Cty. v. Hartge Yacht Yard, Inc.*, 379 Md. 452, 461 (2004).

We review the Tax Court's decisions of law *de novo*. *Johns Hopkins Univ.*, *supra*, 186 Md. App. at 181–82. Even so, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Id.* at 182 (quoting *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571 (2005)). Moreover, "recognizing that the agency's decision is prima facie correct and presumed valid, we must review the agency's decision in the light most favorable to it." *Comptroller of the Treasury v. Citicorp Int'l Commc'ns, Inc.,* 389 Md. 156, 163 (2005) (citations and quotations omitted). As this case involves the constitutionality of an ordinance, we review the Tax Court's decision *de novo*. *See, e.g.*, *Schisler v. State*, 394 Md. 519, 536 (2006).

## DISCUSSION

## I. The Ordinance is a valid excise tax and does not implicate the First Amendment.

Clear Channel first argues that the Ordinance unconstitutionally burdens billboard speech, which is protected by the First Amendment and Article 40 of the Maryland Constitution.[4] The Ordinance, therefore, must be analyzed under strict scrutiny instead of review under a rational basis standard. The City does not disagree that the speech displayed on Clear Channel's billboards is entitled to some level of First Amendment protection. It maintains, however, that the Ordinance is a validly enacted excise tax on Clear Channel's privilege to continue in business in Baltimore City. Clear Channel displays the message

---

[4] The First Amendment of the United States Constitution provides that Congress shall make no law "abridging the freedom of speech, or of the press." Article 40 of the Maryland Constitution provides that "[t]hat the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."

The First Amendment and Article 40 were written in response to similar concerns and to provide similar protections, but are capable of divergent interpretations. *See, e.g., Pack Shack, Inc. v. Howard County*, 377 Md. 55, 64 n.3 (2003). *See also* Matthew S. Fuchs*, Free Exercise of Speech in Shopping Malls: Bases That Support an Independent Interpretation of Article 40 of the Maryland Declaration of Rights*, 69 Alb. L. Rev. 449, 471–72 (2006) ("Maryland courts have indeed interpreted Article 40 more broadly than the federal counterpart."); Anthony W. Kraus, *Beyond the First Amendment: What the Evolution of Maryland's Constitutional Free-Speech Guarantee Shows About Its Intended Breadth*, 47 U. Balt. L.F. 83, 84 (2017) ("Many Maryland cases … not[e] that state and federal free-speech rights are viewed as equivalents "in general" or "ordinarily," but leav[e] open the implicit possibility that it may not always be so."). Here, however, Clear Channel has not offered us any basis to interpret Article 40 differently or more broadly than the First Amendment.

of the third party, and therefore, a tax on its business does not implicate the First Amendment.  We agree with the City and explain.

The City has the "power to tax to the same extent as the State of Maryland has or could exercise said power within the limits of Baltimore City as a part of its general taxing power."  Balt. City Charter, Art. II, § 40.  Indeed, the taxing power of the City is broad. *Am. Nat. Bldg. & Loan Ass'n v. City of Baltimore*, 245 Md. 23, 30 (1966).  Moreover, "a strong presumption exists in favor of the constitutionality of legislative enactments," including revenue raising measures such as the tax at issue here.  *Weaver v. Prince George's Cty.*, 281 Md. 349, 355–56 (1977).  The Supreme Court has recognized this presumption even in the First Amendment context.  *See Leathers v. Medlock*, 499 U.S. 439, 451 (1991).

The Baltimore City Council classified the Outdoor Advertising Tax as an excise. Balt. City Code Art. 28, § 29-2.  An excise is "a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege."  *Weaver*, *supra*, 281 Md. at 357.  "Indeed, an excise is said to embrace every form of taxation that is not a burden directly imposed on persons or property."  *Id.* at 357.  "[A] tax on the *use* of property, as distinguished from a tax based on ownership exclusively, is in the nature of an excise."  *Id.* at 358-59 (emphasis added).

Here, the City has imposed an excise tax on the privilege to charge others a fee to use billboard space.  The Tax Court correctly concluded that the taxation of Clear Channel's business privileges lacks "sufficient communicative elements" for the First

9

Amendment to come "into play."[5] Clear Channel charges third parties a fee to use their property and then displays the third party's message. Although the advertisements and messages placed on the billboards may be entitled to First Amendment protection, Clear Channel's privilege to receive financial compensation for displaying those messages is not. *See Virginia v. Black*, 538 U.S. 343, 358 (2003) ("The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech."). Clear Channel's economic activity is not expressive or communicative. We, therefore, agree with the City that "[t]he mere fact that billboards are a medium of communication does not transform a tax on the sale of billboard *space* into a regulation of *speech*." (Emphasis in original).

In support of its argument that billboard speech is protected by the First Amendment, Clear Channel relies on *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981). *Metromedia*, however, involved an ordinance which prohibited outdoor advertising displays. *Id.* at 503. The ordinance banned commercial advertising on billboards, unless within a specified exception, and certain noncommercial advertisements. *Id.* at 503. The ordinance in *Metromedia* was a content-based regulation of the speech and expression placed on billboards. The Court, therefore, focused its analysis on the levels of First Amendment protection afforded to commercial speech and noncommercial speech. *Id.* at 504-21. The Baltimore City Ordinance at issue here, however, does not regulate the

---

[5] We note that Clear Channel directs several of its arguments in connection with the opinion issued by the circuit court. We, however, do not review the decision of the circuit court, but look through the circuit court's actions and instead review the decision of the Tax Court directly.

10

content placed on Clear Channel's billboards. Certainly, as was the case in *Metromedia*, it does not seek to completely eliminate billboards and certain content placed on them.

Critically, the Tax Court noted that when Clear Channel charges a fee to third parties, "[p]etitioner does not express or say anything; it only sells space to advertisers who say things." We agree with the reasoning of the Tax Court. We acknowledge, however, that Clear Channel occasionally displays its own message. The Tax, however, is only assessed when Clear Channel charges fees to another.

We further recognize that this Ordinance is content neutral.[6] The Tax is applicable whenever an outdoor advertiser charges a third party to use its space, regardless of the

---

[6] Clear Channel cites to *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) and *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019) to support its assertion that the Ordinance is content-based. In our view, these cases are distinguishable from the ordinance in this case. The regulation in *Reed* exempted three categories of signs from a permit requirement, and thus, was content-based on its face, subjecting it to strict scrutiny. *Reed*, *supra*, 135 S. Ct. at 2227. In rejecting the lower court's analysis of the regulation as content-neutral, the Supreme Court held that regulations that are facially content-based are "subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 2228 (quotations omitted). As Clear Channel points out, *Reed* holds that a law is content based if it "draws distinctions based on the message" or "applies to particular speech because of the topic discussed." *Id.* at 2227. As we have noted, however, the Tax at issue applies regardless of the message it displays or topic it covers.

In *Thomas*, Tennessee exempted on-premise signs from an outdoor signage permit requirement. *Thomas*, *supra*, 937 F.3d at 730. The regulation required that exempted signs "be located on the same premises as the activity" and "have as its purpose the identification of the activity, products, or services offered on that same premises." *Id.* (quotations and alterations omitted). The Court held that the regulation was content-based because of the "purpose" component of the regulation. *Id.* A State official was required to "assess the meaning and purpose of the sign's message" to determine if the on-premise exception applied. *Id.* The Court determined that there was no way to do so without "understanding the content of the message." *Id.* Here, the Ordinance imposes no such "purpose"

11

content that is displayed or who paid Clear Channel to display it. Indeed, the tax applies, regardless of whether the advertising promotes coffee from Starbucks, charity for eleemosynary institutions, or other similar types of advertising. Moreover, the tax is only triggered when an advertising host charges third parties a fee. If an advertising host seeks to publish its own speech on its own billboard, the tax is not triggered. Accordingly, we hold, that the outdoor advertising tax is a valid excise tax enacted within the City's taxing powers on the privilege to do business, and that it does not implicate the First Amendment.[7]

Inasmuch as the Ordinance does not infringe on Clear Channel's First Amendment rights, it must only survive under a rational basis review. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359 (2009). Under this review, "a legislative classification will pass constitutional muster so long as it is rationally related to a legitimate governmental interest." *Tyler v. City of Coll. Park*, 415 Md. 475, 501 (2010). Moreover, "a statute reviewed under the rational basis test enjoys a strong presumption of constitutionality." *State v. Phillips*, 210 Md. App. 239, 274 (2013) (quoting *Whiting-Turner Contracting Co. v. Coupard*, 304 Md. 340, 352 (1985)). Clearly, Baltimore City has a legitimate governmental interest in raising revenue, particularly for the purpose of alleviating the burden on Baltimore City taxpayers. Moreover, the Ordinance is rationally related to that

---

requirement in the definition of an outdoor advertising display, and no City official assesses the meaning or purpose of a billboard.

[7] In light of our holding that the Ordinance does not implicate the First Amendment, we need not address Clear Channel's assertion that the First Amendment protects billboard speech and those who publish it. As we have explained, the tax is not targeted at the third parties that ultimately display their speech on Clear Channel's billboards.

interest because the Tax imposed by the Ordinance actually raises revenue, which is placed directly into the City's General Fund. We hold, therefore, that the Ordinance satisfies the rational basis test.

**II.    The Ordinance is unlike those that the Supreme Court has held unconstitutional under the First Amendment.**

Even, assuming *arguendo*, that the tax implicates the First Amendment, it is vastly different from the other taxes the Supreme Court has struck down on First Amendment grounds.  *See Leathers*, *supra*, 499 U.S. 439; *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221 (1987); *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575 (1983); *Grosjean v. American Press Co.*, 297 U.S. 233 (1936). Critically, each of the taxes that have been stricken involved freedom of the press and a concern that the taxes would serve as a way for the government to censor "critical information and opinion[s]," published by the press. *Leathers*, *supra*, 499 U.S. at 447.  The Ordinance here presents no such concern of censoring particular viewpoints or ideas.[8]  It does not target a particular speaker or message; it merely taxes the privilege of doing business in the City.

*Grosjean*, the earliest Supreme Court case on which Clear Channel relies, involved a Louisiana law that targeted newspapers with weekly circulations above 20,000 copies per

---

[8] Clear Channel points to one example of alleged censorship by the City. In that instance, Clear Channel displayed a sign commissioned by the Baltimore police and firefighter unions in 2010, which criticized the City.  The record before the Tax Court is unclear and the Tax Court did not address this lone example in its comprehensive Memorandum and Order.  Notably, this one instance occurred three years before the tax was implemented.  Accordingly, any concerns about alleged censorship are completely unrelated to the Tax at issue.

week and subjected the papers to a 2% tax on gross receipts from advertising. *Grosjean*, *supra*, 297 U.S. at 240. Thus, only newspapers reaching larger audiences were targeted. *Id.* at 240-41. The *Grosjean* Court discussed the history and purpose of the First Amendment and taxes imposed on the press before the First Amendment was enacted. *Id.* at 245-50. Such taxes were imposed as a way for the government to limit information disseminated to the public. *Id.* The Court held that the tax at issue was "a deliberate and calculated device in the guise of a tax to limit the circulation of information to which the public is entitled in virtue of the constitutional guaranties." *Id.* at 250.

Notably, the circulation of a newspaper is quite different than a billboard. As billboards are non-moveable property, the extent of the circulation of the information it displays is based on its location. The billboard Tax, however, is levied upon all off-premise billboard owners, no matter where the signs are located or the size of the population who view the displays. It does not limit the volume of information displayed, nor does it limit the audience that the information may reach.

Clear Channel's second argument as to why the Ordinance should be analyzed under strict scrutiny is that it targets a platform for speech and a small group of speakers within that platform. In support of its argument, Clear Channel relies on *Minneapolis Star*, *supra*, 460 U.S. 575. *Minneapolis Star* involved a special use tax on the paper and ink used in publications. *Id.* at 578. The tax provided an exemption for the first $100,000, thus, providing exemptions only for smaller newspapers with less wide-spread circulation. *Id.* The Court found the tax unconstitutional because it singled out the press and further, that it targeted only a small group of newspapers due to the exemption provision. *Id.* at 591.

14

*Minneapolis Star* is distinguishable for several reasons. First, Clear Channel is not akin to a newspaper, which publishes its own thoughts and ideas. Second, Clear Channel sells space that it owns to third parties that may display their own message.

Critically, as the Tax Court readily observed, the tax here is not measured based on the extent of the circulation of the message that is displayed, only on the size and technology of the billboard. Further, the ordinance does not target a small group of individuals within a particular group. All off-premise billboard owners and operators are assessed the tax based on the dimensions of their billboards. The tax singles out no particular group of billboard owners while exempting others.[9]

Following *Minneapolis Star*, the Supreme Court addressed a challenge to a sales tax in *Arkansas Writers' Project*, 481 U.S. 221. Arkansas imposed a sales tax on receipts from sales of tangible personal property. *Id.* at 244. Exemptions were provided for newspapers and religious, professional, trade, and sports magazines. *Id.* Arkansas Writer's Project published a general interest monthly magazine, which included a variety of subjects, including sports and religion, however, was required to pay the sales tax. *Id.* The Court held that the tax was unconstitutional for two reasons. First, it targeted a small group within the press, as in *Minneapolis Star*, because it was not evenly applied to all magazines. *Id.* at 229. Second, the Court held that the tax included an even "more disturbing use of selective taxation than *Minneapolis Star,* because the basis on which Arkansas

_____

[9] The Ordinance does not apply to signs on the property of a business, which are vastly different from billboards as defined in Balt. City Code Art. 28 § 29-2. Therefore, Clear Channel's attempt to group itself with all types of signs in the City is unavailing.

15

differentiates between magazines is particularly repugnant to First Amendment principles: a magazine's tax status depends entirely on its *content*." *Id*. (emphasis in original).

The City Ordinance at issue in this case clearly does not single out a small group within the press. Nevertheless, even if the business of advertising displays qualifies as a press activity, the tax does not discriminate within a class as did the invalidated taxes in *Grosjean*, *Minneapolis Star*, and *Arkansas Writers' Project*. Indeed, the tax applies evenly to all display owners who charge for the use of their outdoor displays. Further, the Ordinance clearly does not differentiate based on the content of the billboard display.

In *Leathers*, *supra*, 499 U.S. at 447, the Supreme Court addressed each of its prior holdings involving First Amendment challenges to taxes.[10] The Court upheld the tax in *Leathers*, which exempted or excluded newspapers, magazines, and satellite broadcast services. Cable television services, however, were subject to the tax. *Id.* at 442. The Court made clear that differential taxation of certain media "does not by itself, however, raise First Amendment concerns," and is suspect only in certain circumstances. *Id.* at 444. Based

---

[10] At oral argument, Clear Channel relied heavily on *City of Baltimore v. A.S. Abell Co.*, 218 Md. 273 (1958) for the proposition that the Tax must be struck down because it is targeted. *A.S. Abell* involved a challenge to two different taxes on advertising space and time, by newspaper publishers, radio and television broadcasters, billboard operators, and the purchasers of advertising. *A.S. Abell*, *supra*, 218 Md. at 278. The Court addressed the constitutionality of the taxes as they applied to newspaper publishers and radio and television broadcasters. *Id.* at 280-89. Although the Court invalidated the tax as a whole, it did not invalidate the tax as it applied to billboard operators and the purchasers of advertising on First Amendment grounds. *Id.* at 289. Moreover, *A.S. Abell* predates the guidance provided by the Supreme Court in *Minneapolis Star*, *Arkansas Writers' Project*, and, most recently, in *Leathers*.

16

on its previous holdings, the Court articulated three ways that a tax will be invalidated under the First Amendment:

> These cases demonstrate that differential taxation of First Amendment speakers is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints. Absent a compelling justification, the government may not exercise its taxing power to single out the press. The press plays a unique role as a check on government abuse, and a tax limited to the press raises concerns about censorship of critical information and opinion. A tax is also suspect if it targets a small group of speakers. Again, the fear is censorship of particular ideas or viewpoints. Finally, for reasons that are obvious, a tax will trigger heightened scrutiny under the First Amendment if it discriminates on the basis of the content of taxpayer speech.

*Id.* at 447 (citations omitted). To be struck down on First Amendment grounds, a tax must, therefore, threaten "to suppress the expression of particular ideas or viewpoints," target "a small group of speakers," or discriminate "on the basis of the content of taxpayer speech." As we have explained, the excise tax in Baltimore City Ordinance 13-139 on outdoor advertising displays falls into none of these three categories.

The Ordinance at issue here enacts a valid excise tax on outdoor advertising displays in Baltimore City and does not impermissibly burden Clear Channel's right to freedom of speech. We, therefore, hold that the Ordinance is constitutional, and that the Tax Court did not err in affirming the City's denial of Clear Channel's request for refunds. Accordingly, we affirm the judgment entered by the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**