[Cite as *MWL Ents., L.L.C. v. Mid-Miami Invest. Co.*, 2021-Ohio-1742.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MWL ENTERPRISES, LLC | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28915 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-1651 |
| | : | |
| MID-MIAMI INVESTMENT CO., et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of May, 2021.

. . . . . . . . . . .

RICHARD L. CARR, JR., Atty. Reg. No. 0003180 & DAVID M. RICKERT, Atty. Reg. No. 0010483, 110 North Main Street, Suite 1000, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee MWL Enterprises, LLC

TERRY W. POSEY, JR., Atty. Reg. No. 0078292, 109 North Main Street, Suite 500, Dayton, Ohio 45402 & KENNETH R. POHLMAN, Atty. Reg. No. 0018884, 120 West Second Street, Suite 1300, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant Mid-Miami Investment Co.

MICHAEL D. MEUTI, Atty. Reg. No. 0087233 & KELLY E. MULRANE, Atty. Reg. No. 0088133, 200 Public Square, Suite 2300, Cleveland, Ohio 44114
        Attorneys for Defendant-Appellee Store Master Funding IV, LLC

. . . . . . . . . . . .

HALL, J.

{¶ 1} Mid-Miami Investment Company appeals from the trial court's grant of summary judgment to MWL Enterprises, LLC, and Store Master Funding IV, LLC, on their claims for a declaratory judgment and a permanent injunction with respect to easements on Mid-Miami's property that provide driveway access to/from State Route 725. For the following reasons, the trial court's judgments will be affirmed.

## I. Facts and Procedural History

{¶ 2} Mid-Miami, MWL, and Store Master each own commercial property at the intersection of Paragon Road and State Route 725 in Washington Township. In the 1970s, all of the land at issue originally was owned by John Wieland and his wife. In January 1977, the Wielands sold a parcel to Cassano Investments. Soon thereafter, the Wielands sold their remaining parcels to other purchasers, including Mid-Miami. Mid-Miami subsequently sold a portion of its parcel to First National Bank of Dayton. MWL now owns the former Cassano property; Store Master owns the property formerly owned by First National Bank.

{¶ 3} The sale from the Wielands to Cassano included a reciprocal easement, prepared by Attorney John Koverman, which currently applies to Mid-Miami and MWL. Koverman prepared a similar easement for the sale from Mid-Miami to First National Bank. The easements have been in effect since 1977. In essence, the easements allow Mid-Miami, MWL, and Store Master to use each other's driveways, ingresses and egresses, and parking lots. The easement at issue in this appeal is the easement encumbering Mid-Miami's property, which includes driveways that run east-west across the north of MWL's property and north-south along the east side of MWL's property. The

north-south driveway provides access to State Route 725.   (See diagram, below.)



(Mid-Miami's App. Brief, at 1.)

{¶ 4} Except for references to the parties' names, paragraph four of the easements are identical.   They read, in relevant part:

> 4.   The parties desire to enter a mutual Agreement for parking and for ingress and egress over such areas of the [Mid-Miami] Tract and the [MWL/Store Master] Tract as the [parties] and their respective successors and assigns may respectively use for parking and for ingress and egress.
>
> THE UNDERSIGNED PARTIES DO AGREE AS FOLLOWS:
>
> A.      Each of the parties hereby grants an easement for driveway, ingress and egress, and parking purposes, over that part of the [respective

parties'] Tract, which is used for such purposes by the party owning such real estate and the successor or successors in interest and assigns of such party.

B.    Said Easement is for the benefit of each of the parties as their interests appear in [the Tracts], and their respective successors and assigns, and all persons now or hereinafter occupying or who may be lawfully upon [either Tract].

C.    The cost of operation, maintenance, repair, replacement and removal, in connection with said Easement, shall be borne by each of the parties hereto and their respective successors and assigns, and each of the parties hereby agree to maintain, repair, replace and remove as necessary, surface improvements on the respective parcels of real estate, without contribution from the other party or their successors or assigns.

D.    Neither the parties or [sic] their successors in interest shall erect barriers or other obstructions which will prevent the free flow of traffic from one tract to the other.

E.    Nothing herein shall be construed as preventing the parties or their successors or assigns from constructing or maintaining buildings and other improvements on their respective tracts.

{¶ 5} Mid-Miami decided that it wanted to close its driveway along the east side of MWL's property, in large part due to maintenance costs and individuals' using the property to bypass the traffic signal at the intersection of Paragon Road and State Route

725.   In February 2019, Mid-Miami offered to sell this portion of its property to MWL, indicating that it intended to close the driveway if the sale could not be completed.

{¶ 6} Two months later, MWL filed suit against Mid-Miami, alleging that Mid-Miami had expressed its intent to breach the easement.   MWL named Store Master as a defendant due to its similar easement on Mid-Miami's property.   MWL sought (1) a declaratory judgment that its right to access State Route 725 may not be impeded or terminated by Mid-Miami and (2) a permanent injunction preventing Mid-Miami from depriving MWL of access to State Route 725 and access across Mid-Miami's property. Store Master subsequently filed a cross-claim against Mid-Miami, also requesting a declaratory judgment and injunctive relief.

{¶ 7} In January 2020, Mid-Miami sought summary judgment on MWL's and Store Master's claims.   Mid-Miami argued that it was entitled to close the driveway from State Route 725, because it no longer uses that driveway.   Mid-Miami further contended that MWL and Store Master did not have an implied easement by necessity, because they have frontage on State Route 725 and have alternative access points to their properties.

{¶ 8} MWL also moved for partial summary judgment on its claims against Mid-Miami for declaratory judgment and a permanent injunction.   MWL argued that the terms of the easement do not allow "one party by fiat to declare that it is no longer 'using' a portion of its property and therefore terminate the Easement * * *."

{¶ 9} On April 20, 2020, the trial court granted Mid-Miami's motion for summary judgment to the extent that MWL and Store Master claimed an implied easement by necessity.   However, the court concluded that the disputed driveway "is still 'used' by Mid-Miami for driveway and ingress and egress purposes because that portion of Mid-

Miami's property still consists of a driveway that exits onto a public road." The court further concluded that MWL would be irreparably harmed if Mid-Miami were permitted to cut off access to State Route 725 via the driveway. The court thus held that MWL was entitled to a declaratory judgment and a permanent injunction as to the express easement, and it granted MWL's motion for partial summary judgment. Noting that the written easement between Mid-Miami and Store Master was identical to the written easement between Mid-Miami and MWL, the court stated that the "same findings apply to the written easement between Mid-Miami and Store Master." The court denied Mid-Miami's motion for summary judgment as to both MWL's and Store Master's claims.

{¶ 10} Store Master subsequently moved for partial summary judgment, arguing that the express terms of the easement forbade Mid-Miami from unilaterally terminating the easement. It also sought a permanent injunction enjoining Mid-Miami from interfering with Store Master's use of Mid-Miami's property covered by the easement. In support of its motion, Store Master provided information about the actual use of the driveway. Mid-Miami argued that Store Master's data should not be considered, and it asked the trial court to reconsider its April 20, 2020 decision.

{¶ 11} On August 28, 2020, the trial court sustained Store Master's motion for partial summary judgment. The court declined to reconsider its prior decision, and reiterated that Mid-Miami "uses" its north-south and east-west driveways because they continue to exist and the north-south driveway continues to provide ingress and egress from Mid-Miami's property to State Route 725. The court noted that neither decision required Mid-Miami to maintain a driveway to State Route 725 in perpetuity. It explained that Mid-Miami was barred from depriving MWL and Store Master of access to State

Route 725 only as long as there was a driveway on Mid-Miami's property that provided ingress and egress to State Route 725. The court further concluded that Mid-Miami's repeated threats to cut off access to State Route 725 via the north-south drive constituted a sufficient basis to grant a permanent injunction.

{¶ 12} Mid-Miami appeals from the trial court's judgments, raising two assignments of error. It claims that the trial court erred in granting summary judgment and permanent injunctions in favor of MWL and Store Master, and that the court, instead, should have granted judgment in its favor.

{¶ 13} We review a trial court's ruling on a summary-judgment motion de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42. Under Civ.R. 56(C), summary judgment is proper when the movant demonstrates "that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 617, 687 N.E.2d 735 (1998).

## II. Claims for Declaratory Judgment

{¶ 14} In its first assignment of error, Mid-Miami claims that the trial court erred in granting the summary judgment motions in favor of MWL and Store Master and should have granted Mid-Miami's motion for summary judgment.

{¶ 15} Under the Declaratory Judgment Act, R.C. Chapter 2721, common pleas courts "may declare rights, status, and other legal relations." R.C. 2721.02(A). The Act further provides that "any person interested under a deed, will, written contract, or other writing constituting a contract * * * may have determined any question of construction or

validity arising under the instrument * * * and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.03. "The purpose of the act is to provide a mechanism by which parties can 'eliminate uncertainty regarding their legal rights and obligations' quickly and conclusively." *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 43, quoting *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8.

{¶ 16} An easement is "a property interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists." *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Cty. Commrs.*, 162 Ohio App.3d 394, 2005-Ohio-3872, 833 N.E.2d 788, ¶ 28 (2d Dist.), quoting Ohio Jurisprudence 3d (2005), Easements and Licenses, Section 1. "When interpreting the terms of a written easement, the court must follow the ordinary rules of contract construction so as to carry out the intent of the parties as demonstrated by the language in the contract." *Delaware Golf Club, LLC v. Dornoch Estates Homeowners Assn., Inc.*, 5th Dist. Delaware No. 19 CAE 04 0027, 2020-Ohio-880, ¶ 41; *Hemmelgarn v. Huelskamp & Sons, Inc.*, 2019-Ohio-5298, 138 N.E.3d 1199, ¶ 12 (3d Dist.).

{¶ 17} The interpretation of a contract is a question of law. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38; *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). When the terms of an easement are clear and unambiguous, a court cannot create new terms by finding an intent not expressed in

the language used. *Hemmelgarn* at ¶ 12, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

{¶ 18} Contractual language is not ambiguous "if the subject language's meaning can be determined by considering the language in the context of other contractual language." *EnQuip Technologies Group Inc. v. Tycon Technoglass S.r.l.*, 2012-Ohio-6181, 986 N.E.2d 469, ¶ 16 (2d Dist.); *Dayton Outpatient Ctr., Inc. v. OMRI of Pensacola, Inc.*, 2014-Ohio-4105, 19 N.E.3d 608, ¶ 13 (2d Dist.). "Often, the intended meaning of a word or phrase may be clear when that word or phrase is considered in the context of other words or phrases in the contract. Thus the intended meaning of any part of the parties' contract should be determined in light of the whole contract." (Citations omitted.) *EnQuip Technologies* at ¶ 16.

{¶ 19} The central question here is the meaning of the term "used" in paragraph 4A of the easements. As quoted above, paragraph 4A "grants an easement for driveway, ingress and egress, and parking purposes, over that part of the [respective parties'] Tract, *which is used for such purposes* by the party owning such real estate and the successor or successors in interest and assigns of such party." (Emphasis added.) As in the trial court, Mid-Miami claims on appeal that it is entitled to close the driveway access to State Route 725, because it is no longer "using" that portion of its property for that purpose.

{¶ 20} In support of its argument, Mid-Miami points to the affidavit of John Koverman, general partner of Mid-Miami and the attorney who prepared the two easement documents for Wieland and Mid-Miami. In his affidavit, Koverman stated that "Mid-Miami does not use the ingress and egress from its tract to and from State Route

725 (Miamisburg-Centerville Road), nor the driveway to said ingress and egress." (Koverman Aff. ¶ 14; *see also id.* ¶ 15.) He indicated that, due to the non-use, Mid-Miami intends to close them. (Koverman Aff. ¶ 8, ¶ 15.)

{¶ 21} Koverman further stated that neither Mid-Miami nor its tenants have placed signage at the State Route 725 ingress/egress (*id.* ¶ 15), and the leases between Mid-Miami and its tenants do not authorize the tenants to use that access point to State Route 725. In his second deposition, however, Koverman clarified the tenants "can use whatever parking they have available, whatever driveways we have available and whatever ingress and egress are available. But they have no right to tell me where the points of ingress and egress are going to be or where the parking is going to be or where the roadways are going to be." (Koverman Depo. 2 at 96.) Koverman agreed that all of the entrances are available to the general public. (*Id.* at 97.) Koverman stated that, from his observation, Mid-Miami's tenants and their guests use the entrance off of Paragon Road. (*Id.* at 100-101.) Upon further questioning, however, he indicated that his observations focused on the Paragon restaurant (which he owns), located on the corner property at the intersection, not Mid-Miami's property. (*Id.* at 117-118.)

{¶ 22} Koverman stated that Mid-Miami's building is fully leased and includes such businesses as a Donato's, a bar, a swimming pool supply company, an exercise business, and a catering business. (Koverman Depo. 2 at 123.) Store Master provided evidence that the driveways at issue are being used to access Mid-Miami's property.

{¶ 23} Mid-Miami notes that the use of the property subject to the easements has changed over time. For example, one of MWL's predecessors turned a parking lot into a landscaped lawn. (Koverman Depo. at 50.) Koverman's testimony suggested that

such a change might not have been permitted by the easement, but he "had no problem with it." (*Id.* at 50-51.)

{¶ 24} In granting MWL's and Store Master's motions for partial summary judgment and denying Mid-Miami's opposing motion for summary judgment, the trial court focused on the intent and language of the easement documents, not the traffic flow on the properties. The trial court agreed with MWL's and Store Master's argument that Mid-Miami continues to "use" the easement property for driveway and ingress and egress purposes because that property consists of a driveway that exits onto State Route 725. We agree with the trial court's interpretation of the easement documents.

{¶ 25} The easement documents do not define the term "use." However, the language of the easements inform the meaning of that term. The overall intent of the easements, as reflected in paragraph 4, was to allow mutual use of driveways, parking, and ingresses and egresses to the extent that such areas existed on the properties. Paragraph 4D specifically prohibited the erection of barriers or other obstructions that would prevent the free flow of traffic between the tracts.

{¶ 26} Paragraph 4E recognized that the parties may wish to construct other buildings and or make improvements on their respective properties. The easements did not prohibit the respective property owners from constructing or maintaining buildings or other improvements, even on the portions of the property that consisted of driveways, parking, or ingress and egress.

{¶ 27} The language of the easements thus indicated a general understanding that the "use" of the property would be reflected by how the property was configured. The easements did not require the property owners to have parking lots, driveways, and

ingresses and egresses, and the property owners had the flexibility to construct buildings or otherwise improve the property. However, to the extent that the properties contained parking lots, driveways, and ingresses and egresses, the easements required the free flow of traffic from one property to another and the mutual use of parking areas, which could not be impeded.

{¶ 28} Even assuming, for sake of argument, that the easements were ambiguous, Koverman's deposition testimony supports this interpretation. As noted by the trial court, Koverman testified that the Wielands purchased a large 12-acre lot (Lot No. 2) with the intention of developing the larger portion and selling outlots to finance the purchase of the lot. (Koverman Depo. at 19.) The north-south driveway was put in sometime in 1976 or 1977 to provide access from State Route 725 to the rear of the Wielands' lot, which was approximately 6.5 acres. *Id.* at 22. (The building on MWL's property was constructed after the north-south driveway was put in. *Id.* at 27.) The east-west driveway to the north of MWL's property was a "remnant that was left over after the condominiums were built" to the north of MWL's property. *Id.* at 28.

{¶ 29} Koverman explained that, in creating the easement between the Wielands and Cassano, the property owners were "[t]rying to keep flexibility in the development of their parcels." *Id.* at 25. "In other words, they wanted as much flexibility, but if one was using something for parking, the other one could. * * * [T]he whole purpose was make this real flexible so customers could move around through there, but they didn't have to have, specifically develop their property." (Koverman Depo. at 26-27.)

{¶ 30} Koverman stated that Wieland and Cassano recognized that "where the building is located today may not be where the building is located tomorrow." *Id.* at 27.

When asked if he had any discussions about "what they meant by the terms of the property used by the party owning the property or its successors and assigns," Koverman testified that Wieland "wanted it this way. * * * And he wanted those very words in there because he only wanted, he wanted as much flexibility, and the condition of this easement, it's an express easement, but it's conditioned upon what the other party is using their tract of land for, and he wouldn't specify his tract." *Id.* at 31-32. Koverman stated that Wieland did not want the easement to prevent him from either building on or selling a portion of his property. *Id.* at 34.

{¶ 31} Mid-Miami's interpretation of the term "use" would render the easements illusory. Whether the easement was being used for the purpose of driveways, ingress and egress, or parking would be subject to the whims of the property owner. Under Mid-Miami's approach, Mid-Miami (or the other property owners) could unilaterally state, at any given moment and without making any changes to the property, that the easement property was or was not being used for driveways, ingress and egress, and parking. Koverman stated in his deposition that "no period of time" was required before the ingress/egress could be shut down due to non-use. (Koverman Depo. 2 at 104.) Such an interpretation is contrary to the intent of the easements as reflected in the language of easement documents as a whole and, particularly, the prohibition against barriers or other obstructions to the free flow of traffic between the properties.

{¶ 32} Mid-Miami asserts on appeal that the only evidence regarding usage of the easement property was Koverman's deposition statements that Mid-Miami was not using the property for parking, driveways, and ingress and egress. Upon review of the record, other portions of Koverman's deposition testimony and Store Master's evidence raise

questions about whether Mid-Miami's tenants and their business invitees access Mid-Miami's property from State Route 725 via the north-south driveway along the east side of MWL's property. Regardless, because we conclude that the property at issue is still being "used" for driveway and ingress and egress purposes due to the existence of driveways and ingress and egress on that property, the traffic flow on the easement property is not dispositive.

{¶ 33} Finally, Mid-Miami argues that the trial court's interpretation of the easements "leaves Mid-Miami with a property that exposes it to liability and potential reconstruction costs." It asserts that it faces insurances issues and maintenance expenses with no actual benefit to its use of the dominant property, where its building ("Paragon Center") is located. Mid-Miami further argues that the easements do not require an ingress/egress at State Route 725. Mid-Miami contends that it is "entitled to summary judgment holding that it may terminate and barricade the Easement Property pursuant to the express language of the easement so long as it does not cut-off access from one parcel to another."

{¶ 34} We agree with Mid-Miami that the easement documents do not require that it provide access to State Route 725. Nevertheless, the only current driveway providing ingress and egress to/from State Route 725 to/from the MWL property and the west side of the Store Master property is that which currently exists on Mid-Miami's strip of land between the other two properties. While the easements permit Mid-Miami to change the use of that portion of its property, Mid-Miami cannot simply declare that the driveway access will no longer be used as driveway access and thus the easement no longer applies.

{¶ 35} Mid-Miami's first assignment of error is overruled.

### III. Claims for Permanent Injunction

{¶ 36} Mid-Miami's second assignment of error claims that the trial court improperly granted permanent injunctions to MWL and Store Master.

{¶ 37} A permanent injunction is not a claim for relief "but a remedy available to the court for use in aid of relief it has ordered. A party is not entitled to an injunction absent an order for relief, to which he is entitled only after demonstrating a basis for his claim for relief." *Lowry v. Cox*, 2d Dist. Miami No. 92-CA-15, 1992 WL 335115, *3 (Nov. 16, 1992). In other words, the party seeking a permanent injunction must first prevail on the merits of its claim. *See, e.g., W. Branch Local School Dist. Bd. of Edn. v. W. Branch Edn. Assn.,* 2015-Ohio-2753, 35 N.E.3d 551, ¶ 15 (7th Dist.)*; Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist.2000).

{¶ 38} "In order to obtain an injunction, the moving party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists." *Dayton Metro. Hous. Auth. v. Dayton Human Relations Council*, 81 Ohio App.3d 436, 442, 611 N.E.2d 384, 388 (2d Dist.1992). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fac[t] a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *ITS Fin., L.L.C. v. Gebre*, 2d Dist. Montgomery No. 25416, 2014-Ohio-2205, ¶ 23, citing *State v. Bluser*, 2d Dist. Montgomery No. 18856, 2002 WL 191567, *1 (Feb. 8, 2002).

{¶ 39} Irreparable injury or harm has been defined as "an injury 'for the redress of which, after its occurrence, there could be no plain, adequate and complete remedy at law, and for which restitution in specie (money) would be impossible, difficult or incomplete.' " (Citations omitted.) *Connor Group v. Raney*, 2d Dist. Montgomery No. 26653, 2016-Ohio-2959, ¶ 21.

{¶ 40} "It is within the trial court's discretion to make a reasonable determination whether an adequate remedy at law is available or whether irreparable injury will result to the party seeking an injunction if no injunction is issued." *Id.*; *see Lowry* at *2 ("An application for an injunction is addressed to the sound discretion of the court[.]"). Accordingly, an appellate court generally reviews the grant of a permanent injunction for an abuse of discretion. *Lamar Advantage GP Co., LLC v. Cincinnati*, 2020-Ohio-3377, 155 N.E.3d 245, ¶ 21 (1st Dist.); *Mack v. Toledo*, 2019-Ohio-5427, 151 N.E.3d 151, ¶ 30 (6th Dist.).

{¶ 41} The trial court concluded that MWL and Store Master were entitled to summary judgment on their requests for a permanent injunction as it applied to the express easement. Addressing MWL's request, the trial court reasoned:

MWL has established, by clear and convincing evidence, that an injunction is necessary to prevent irreparable harm. It is undisputed that access to State Route 725 via Mid-Miami's driveway is valuable to MWL: Mr. Koverman testified that such access is of "great importance" because "it provides a right-in right-out, left-in left-out, to the road right in front of the property." Koverman Dep. at 57:19-23. The Court therefore finds that MWL would be irreparably harmed if Mid-Miami is permitted to cut off

MWL's access to State Route 725 via the driveway. The Court also finds

that MWL lacks an adequate remedy at law.

(Apr. 20, 2020 Dec. at 16-17.) With respect to Store Master's request, the trial court noted that Mid-Miami had repeatedly threatened to cut off access by MWL and Store Master to the north-south driveway, and it found that Store Master "need not show that Mid-Miami has already taken action to barricade the north-south driveway because '[a] threat of harm is a sufficient basis on which to grant injunctive relief.' " (Aug. 28, 2020 Dec. at 10, citing *Stoneham*, 140 Ohio App.3d at 274, 747 N.E.2d 268.)

{¶ 42} The trial court thus granted nearly identical injunctions, which together provided:

For so long as there is a driveway on Mid-Miami's property that provides ingress and egress to State Route 725, Mid-Miami shall not deprive [MWL and Store Master] of access to State Route 725 via said driveway. Nothing herein shall be construed as affecting any other right or obligation of [MWL, Store Master,] or Mid-Miami under the [easements]."

{¶ 43} Mid-Miami claims that genuine issues of material facts exist as to "(1) whether Mid-Miami took any action that requires an injunction; and (2) whether an injunction is necessary to prohibit any present or future harm." It asserts that injunctive relief was inappropriate because Koverman testified only to his future intent, not a present intent, to barricade the north-south driveway. Mid-Miami further raises that both MWL and Store Master have frontage along State Route 725 and are not "landlocked." Mid-Miami states that both have the potential to "insert their own direct access to State Route 725," that Store Master has its own permanent driveway easement on the east side of its

property, and that MWL can access its property from Paragon Road and Washington Woods Road.

{¶ 44} We agree with the trial court that no genuine issues of material fact exist and that MWL and Store Master are entitled to the permanent injunctions. Prior to the lawsuit, Mid-Miami offered to sell the easement property to MWL and indicated an intention to close the driveway if the sale were not completed. During his deposition, Koverman repeated his desire to barricade the north-south driveway to State Route 725.

{¶ 45} The trial court concluded, and we agree, that Mid-Miami continues to "use" the easement property for driveway and ingress and egress because that property consists of a driveway that exits onto State Route 725. In light of that conclusion, MWL and Store Master have the right to unimpeded use of that driveway and ingress/egress. The fact that MWL and Store Master may be able to create a different access point to State Route 725 from their properties or that Store Master already has another access point to State Route 725 does not negate the harm that MWL and Store Master would sustain if Mid-Miami were to impede their access to the easement property.

{¶ 46} The trial court's permanent injunctions simply require Mid-Miami to comply with the terms of the easements. The injunctions do not require that Mid-Miami maintain a driveway that provides access to State Route 725 in perpetuity. Rather, they require, consistent with the terms of the easements, that *so long as there is a driveway that provides ingress and egress to State Route 725*, Mid-Miami may not deprive MWL and Store Master of access to that driveway. The trial court did not abuse its discretion in imposing such permanent injunctions.

{¶ 47} Mid-Miami's second assignment of error is overruled.

## IV. Conclusion

**{¶ 48}** The trial court's judgments will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Richard L. Carr, Jr.
David M. Rickert
Terry W. Posey, Jr.
Kenneth R. Pohlman
Michael D. Meuti
Kelley E. Mulrane
701-707 Miamisburg-Centerville Road, LLC
Hon. Mary E. Montgomery